**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**EMMANUEL HENDERSON,**

**Petitioner,**

**v.**

**DAN SPROUL,**

**Respondent.**

**Case No. 24-CV-1860-NJR**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Petitioner Emmanuel Henderson is a federal inmate who brings this petition for writ of habeas corpus under 28 U.S.C. § 2241 to challenge his loss of 41 days of good conduct time. At the time he filed this petition, he was housed at FCI Marion, a Bureau of Prisons (BOP) facility located within the Southern District of Illinois. Respondent filed a response to the petition (Doc. 10), to which Henderson replied (Doc. 12). For the reasons set forth below, the petition is denied.

### BACKGROUND

Henderson is serving a 101-month sentence imposed by Chief Judge Staci M. Yandle in 2020. *See United States v. Henderson*, No. 19-30077-SMY (S.D. Ill.). His projected release date is December 7, 2026. *See* BOP Inmate Search, www.bop.gov/inmateloc/ (last visited May 26, 2026). Although he is now in pre-release custody, he resided at FCI Marion at the time he filed this petition.

On August 13, 2023, Henderson was charged in an incident report with possessing

Page 1 of 11

drugs. (Doc. 10-2, pp. 1-16). According to the incident report, while Officer Tyler Huckelberry was escorting Henderson from his cell to be searched, Henderson pulled a small plastic bag from his waist area and threw it behind him, towards a set of stairs. (*Id.* at p. 1). Huckelberry retrieved the bag and determined that it contained a smaller plastic bag filled with folded pieces of paper, which enclosed several pieces of a film-like substance, labeled either "A8" or "N8."[1] Prison medical staff determined that the substance was Suboxone, a medication that Henderson had not been prescribed. (*Id.* at p. 14).

After the Federal Bureau of Investigation declined to pursue criminal charges, the prison's Unit Discipline Committee (UDC) referred the matter to a Discipline Hearing Officer (DHO). (*Id.* at p. 15). On August 17, 2023, Henderson received a notice informing him that the DHO would schedule a hearing and advising him of his rights. (Doc. 10-1, ¶ 6).

The hearing took place on September 1, 2023. Henderson waived his right to have a staff representative or to call any witnesses. (Doc. 10-2, p. 18). He also denied the charge but did not provide a statement in his defense. (*Id.* at p. 19). Based on the evidence presented at the hearing, which consisted of the incident report, the statement identifying the substance as Suboxone, and chain of custody documentation, the assigned DHO concluded that Henderson had possessed drugs in violation of institution rules and sanctioned him with the loss of 41 days good time credit, seven days in disciplinary

---

[1] Photographs of the bag and its contents are in the record. (Doc. 10-1, pp. 5-13).

segregation, and a loss of his commissary, email, and visiting privileges for 30 days. (*Id.* at

pp. 20-21).

Henderson appealed the decision through the BOP's internal review process,

arguing the DHO had violated his due process rights by failing to consider an

exculpatory video of the incident. (*Id.* at pp. 23-24). On October 16, 2023, the BOP's

Regional Director agreed that the DHO had erred by not properly addressing

Henderson's request to review video evidence and ordered a re-hearing. (*Id.* at pp. 27-

28).

The DHO conducted a new hearing on December 7, 2023. (*Id.* at p. 36). This time,

Henderson made use of a staff representative. According to the DHO report, Henderson's

staff representative reviewed video footage of the incident and characterized it as follows:

> I see the inmate walk in front of the stairs with his hand in his left pocket,
> and his hand drops out of his pocket. Huckleberry [sic] then immediately
> picks something up of [sic] the ground. I cannot confirm what was dropped
> and/or picked up. They then pat search inmate Henderson.

(*Id.*). Henderson also provided a statement denying that he possessed the drugs, which

the DHO transcribed as follows:

> I am innocent and it was not me that had the drugs. During and prior to the
> situation there were other inmates in the dayroom. When he was searching,
> I was pushing my drawers out of my crouch and my behind. I was just
> fixing myself. Those were not my drugs. He turned out of the blue and
> found them. If I had thrown drugs, they would have tackled me. I got
> searched when I first walked out of my cell.

(*Id.*).

After reviewing the video evidence, the DHO assigned to the case, Evelyn Keller,

summarized the footage for her report. She noted that when Henderson walked under

the staircase, he "drop[ped] [his] arm from [his] pocket at which time SIS Tech Huckleberry [sic] bends down . . . and picked something up off the floor." Based on her review of the video evidence, Huckelberry's statement in his incident report, and Henderson's explanation, Keller determined that the drugs "more than likely" were Henderson's. (*Id.* at p. 39). She re-issued the sanctions imposed previously. (*Id.*).

Henderson again appealed, this time arguing that the evidence considered by the DHO did not support the charge and that the video did not show him throwing anything or reaching toward his waist. (*Id.* at p. 46). He asserted that the DHO should have weighed in on Huckelberry's credibility and made clear why she was rejecting his account. (*Id.*). The BOP's Regional Appeal Office denied the appeal after concluding that the DHO report clearly addressed what the video depicted and that the hearing afforded Henderson due process. Henderson then appealed to the BOP's central office, which also affirmed the DHO's decision. (*Id.* at p. 52).

On August 12, 2024, Henderson filed this habeas petition. The Government responded to the petition and furnished the video evidence to the Court for *in camera* review. (Doc. 11). The Government explains that the footage cannot be released publicly because of the risk that inmates could learn how to evade the prison's camera system. (Doc. 10-1, p. 5).

## APPLICABLE LAW

Federal inmates must be given due process before their good time credit can be rescinded. *Brooks–Bey v. Smith,* 819 F.2d 178, 180 (7th Cir. 1987). Inmates can challenge the loss of good conduct credit through a petition for habeas relief pursuant to 28 U.S.C.

Page 4 of 11

§ 2241. *Jones v. Cross*, 637 F.3d 841, 842 (7th Cir. 2011).

In a disciplinary hearing, inmates retain certain due process rights such as: (1) a receipt of written notice of the charges in advance of the hearing; (2) an opportunity to be heard before an impartial decision maker; (3) the right to call witnesses and present evidence where the same will not be unduly hazardous to safety or correctional goals; and (4) a written statement as to the evidence relied on and the reason for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). Along with these safeguards, due process requires that the findings of the DHO be supported by "some evidence from which the conclusion of the administrative tribunal could be deduced." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (quoting *United States ex rel. Vajtauer v. Comm'r of Immigr.*, 273 U.S. 103, 106 (1927)); *see also Scruggs*, 485 F.3d at 941. The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs*, 485 F.3d at 941 (adding that "once the meager threshold has been crossed our inquiry ends"). A habeas court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at 1077.

### DISCUSSION

Henderson's only argument for reversing the DHO's finding is that her decision failed to properly consider and address what the video footage of the incident depicted. Specifically, he says that the video shows him being patted down as he was taken from his cell, suggesting that officers did not locate anything on him at that time. Then, when

he was escorted by the stairway, the footage shows that his hands were not in his pockets and that nothing dropped out his pants or from his hand before Officer Huckelberry located the drugs on the ground.

Due process, in a prison disciplinary hearing, only requires "that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. The relevant question under this standard is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 456-57. The Court cannot "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Instead, the "some evidence" standard is satisfied so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

Henderson takes the position that the video footage is exculpatory, so the DHO's decision is faulty.[2] The Court disagrees. The footage depicts two correctional officers walking behind Henderson and another inmate through the prison's dayroom. The group is walking away from the camera, towards an area of the room that is partially blocked from view by a staircase. From the Court's review, Henderson appears to have one of his hands in a pants pocket or near his waist. As Henderson passed in front of the staircase, he becomes obscured from view, and the Court cannot discern what, if anything, he did with his hands. It is apparent that Officer Huckelberry retrieves

---

[2] Henderson states that he has no objections to the Government's decision to submit the video to the Court for *in camera* review. (Doc. 12). He notes, however, that he does not know how long the video is or what time it starts and stops.

something on the floor in front of the stairs a few seconds later.[3] After viewing the footage numerous times, the Court finds that it sheds little light on whether Henderson was — or was not — the source of the drugs Huckelberry located.

The DHO and Henderson's staff representative were apparently able to discern additional details from the footage. The staff representative reported that he saw Henderson's hand leave his pocket as he walked in front of the stairwell. (Doc. 10-2, p. 36). The DHO also claimed to see Henderson drop his arm from his pocket shortly before Officer Huckelberry bends down. (*Id.* at p. 39). That detail is not obvious to the Court from its review of the footage, but the Court is not prepared to say that other views are erroneous. At a minimum, it is apparent that the footage is not exculpatory. That is, it does not definitively establish that the drugs *were not* Henderson's.

Besides, the DHO's finding also relied on Officer Huckelberry's own account, as documented in the incident report. (*Id.* at p. 38). Huckelberry reported that Henderson "pulled out a small plastic bag from his waist area and threw it behind him." (*Id.*). The Seventh Circuit has held that an officer's conduct report alone may provide "some evidence" to support a hearing officer's decision. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (concluding that description in a disciplinary report is "some evidence"); *Isby-Israel v. Finnan*, 347 F. App'x 253, 254 (7th Cir. 2009). Accordingly, even without the video footage, the DHO's decision would be sufficient to meet the "meager threshold" required in this context. *Scruggs*, 485 F.3d at 941. To the extent Henderson

---

[3] The footage continues for approximately seven more minutes, but no party has suggested that any of that period is relevant here.

views Huckelberry as unreliable, it is notable that he never attempted to call him as a witness, despite having the opportunity to do so at two hearings.

Henderson also suggests that there exists video footage of him being patted down by the officers as he left his cell. He believes that the fact the officers found nothing on him at that time is exculpatory evidence that the DHO should have considered. The pat-down Henderson describes is not clearly depicted on the footage provided to the Court, which begins about 17 seconds before Officer Huckelberry retrieved the bag of drugs from the ground. In his reply brief, Henderson makes clear he has never seen the video footage that the DHO considered, so it is unsurprising that he was not aware the pat-down is not included. (Doc. 12). The Court therefore will treat this portion of Henderson's argument as a claim that he was denied due process because the DHO failed to locate and consider that earlier footage, which might have been exculpatory.

"[D]ue process requires that prisoners receive access to exculpatory evidence, including video recordings, 'unless its disclosure would unduly threaten institutional concerns.'" *Hudson v. Knight*, 751 F. App'x 897, 899 (7th Cir. 2018) (quoting *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002)). If, as here, security concerns prevent an inmate from reviewing exculpatory video evidence himself, prison officials still must review relevant footage for *possibly* exculpatory evidence if an inmate requests it. *Id.*

During the initial disciplinary hearing, Henderson urged the DHO to review video footage of Huckelberry finding the drugs. He emphasized, "I did not pull anything from my waistband or throw anything. The camera will show that." (Doc. 10-2, p. 21). The BOP sustained his administrative appeal and ordered another hearing so that the DHO could

consider the footage. (*Id.* at p. 27). But after reviewing that footage, the DHO ruled against him. Now, Henderson contends the DHO should have considered video footage of a pat-down that took place at some time before the footage here. However, the record contains no indication Henderson clearly requested the hearing officer review footage of the pat-down as opposed to the moment Huckelberry allegedly saw him toss the bag of drugs to the ground. *See Piggie*, 277 F.3d at 925 (stating that a prisoner would not be denied due process based on a lack of access to potentially exculpatory video footage if he failed to make a request before or during the hearing); *Renth v. Sproul*, No. 18-2116, 2021 WL 1169556, at *3 (S.D. Ill. Mar. 26, 2021) ("[T]he Seventh Circuit has clarified that due process does not require a disciplinary officer to consider or review evidence that was never requested by the prisoner.").

And even if the footage depicts what Henderson says it does—a pat-down that yielded no drugs—the DHO's failure to consider it would be harmless. *See Nelson v. Stevens*, 861 F. App'x 667, 669 (7th Cir. 2021) ("The denial of potentially exculpatory evidence at a prison disciplinary hearing is subject to harmless-error review; the prisoner must demonstrate that he was prejudiced by the deprivation."); *see also Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (invoking a harmless error standard in this context). For one, the DHO was already aware Henderson had been patted down prior to the events in the video: Henderson told her so at the hearing. (Doc. 10-2, p. 39 ("I got searched when I first walked out of my cell.")). Other than corroborating that a pat-down, in fact, took place, it is difficult to see how video footage of that pat-down would make a meaningful difference. At most, the footage would show that Huckelberry did not *find* drugs on

Henderson—not that Henderson did not *possess* them. True, Huckelberry's failure to find drugs on Henderson is somewhat exculpatory,[4] but the Court's review of exculpatory evidence is limited to evidence that "directly undercuts the reliability of the evidence on which the disciplinary authority relied or there are other extra-ordinary circumstances." *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989). Here, video footage of a prior pat-down would not directly undermine the evidence relied on by the DHO, principally consisting of Huckelberry's statement in the incident report that Henderson threw the bag to the floor and the evidence that the bag contained Suboxone, which he was not permitted to possess. Because this Court cannot say that "no reasonable adjudicator could have found [Henderson] guilty of the offense on the basis of the evidence presented," *Henderson*, 13 F.3d at 1077, his petition must be denied.[5]

### CONCLUSION

For these reasons, the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Emmanuel Henderson (Doc. 1) is **DENIED**.

If Henderson wishes to appeal this Order, he must file a notice of appeal with this Court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). If Henderson chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the

---

[4] The exculpatory value of this potential evidence is further limited by the reality that a quick pat-down search plausibly *would not* turn up the contraband at issue here: a small bag filled with pieces of a paper-like substance.

[5] In his reply brief, Henderson also raises concerns regarding a label on the bag of drugs and whether the drugs were properly tested. (Doc. 12, pp. 4-5). He also argues that he did not have a reason to possess drugs because of his participation in the prison's RDAP program. Because Henderson did not raise these points in his original petition, they are waived. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[D]istrict courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006) (noting that a habeas petition must "specify all the grounds for relief available to [the petitioner].").

outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). If Henderson files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

It is not necessary for Henderson to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

This entire action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   May 26, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**